# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| In Re: Patrick Dennis Killian, Debtor. | ) | |
| | ) | |
| PATRICK DENNIS KILLIAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | NO. 12-3156 |
| | ) | |
| JOHN H. GERMERAAD, Trustee, A. | ) | |
| CLAY COX, Trustee, and NANCY J. | ) | |
| GARGULA, U.S. Trustee, | ) | |
| | ) | |
| Appellees. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

On Appeal from the United States Bankruptcy Court for the Central

District of Illinois.

## I. INTRODUCTION

The Appellant, Dennis Killian, claims that the Court has jurisdiction,

pursuant to 28 U.S.C. § 158(a), of this direct appeal from the bankruptcy

court.  The Appellee, the Chapter 13 Trustee, objects to jurisdiction based

on equitable and pragmatic mootness.  If the appeal is not found to be

moot, then the Appellee acknowledges the Court has jurisdiction under § 158(a).

The Appellant is a debtor who filed a Chapter 13 bankruptcy case in the United States District Court, Springfield Division, on January 14, 2011. This appeal raises several issues. The first issue is whether the bankruptcy court erred, as a matter of law or as clearly factual error, in involuntarily converting the Appellant's Chapter 13 case to a Chapter 7 case. The second issue is whether the bankruptcy court erred as a matter of law and committed clear factual error in disallowing the Appellant's amended claim of exemption.

The Appellee contends that the appeal is moot for equitable and pragmatic reasons because of certain actions taken in compliance with the bankruptcy court's order converting the case.

For the reasons that follow, the Court finds that the appeal is not moot and the bankruptcy court committed no error in involuntarily converting the case or in disallowing the Appellant's amended claim of exemption. Therefore, the decision of United States Bankruptcy Judge

Mary P. Gorman is affirmed.

## II. FACTUAL BACKGROUND

### (A)

After the Chapter 13 bankruptcy petition was filed on January 14, 2011, the § 341 meeting occurred on March 11, 2011 and the Trustee filed his confirmation report on March 14, 2011.  At the § 341 meeting, a creditor questioned the Appellant about a transfer of land to a family trust. Although the land was sold within two years of the bankruptcy filing, the Appellant did not disclose the transfer on the Statement of Financial Affairs.

According to testimony at a hearing before the bankruptcy court on April 3, 2012, the Appellant contacted an attorney regarding significant credit card debt that he and his wife had incurred.  At the time, the Appellant wished to avoid filing for bankruptcy protection and hoped to negotiate the settlement of various debts.  The Appellant employed the law firm of Ostling and Associates to conduct negotiations with various credit card companies to which he was in debt.

According to the transcript of an April 24, 2012 hearing before the bankruptcy court, certain creditors requested a Rule 2004 examination relating to the undisclosed land transfer.  The bankruptcy court found that Appellant had "improperly" resisted multiple attempts to arrange a Rule 2004 examination and was ordered to appear.   At the Rule 2004 examination, the Appellant admitted to selling land to his siblings' trust in April 2009.  He testified that the sale proceeds ($60,000) were transferred into his personal account at Busey Bank.  When asked what became of that money, the Appellant testified that he paid medical bills, attorney's fees, and a credit card through Ostling and Associates.  He stated that he also used some of the proceeds for mortgage payments.   The Appellant specifically denied transferring any of his assets to his wife prior to the filing.  Although the transcript of the Rule 2004 examination was never presented to the bankruptcy court, that court was aware of the above statements through references in pleadings and at hearings.

After the Rule 2004 examination, a creditor sought an accounting of the Appellant's trust account with Ostling and Associates.  Ostling and

Associates filed the trust account records once ordered to do so by the bankruptcy court.  According to the records and testimony from the Appellant's counsel, the Appellant used $25,000 from the land sale to establish the trust account in 2009.  Counsel stated that the purpose of depositing those funds was to negotiate, reduce and ultimately pay off several of the Appellant's credit card debts.  At some point in 2010, a credit card debt of about $23,000 was settled for approximately $9,000, which was paid from the trust account.  According to counsel, the other debts were unable to be resolved or settled.  On January 10, 2011, four days before the petition date, $14,869 remained in the trust account.

The Appellee claims Ostling and Associates transferred substantial sums out of the trust account within three days of the bankruptcy filing. Appellant's counsel took $1,274 in attorney's fees for two transactions on January 11, 2011.  The Appellant's wife then received approximately $11,000 from the trust on January 12, 2011.  As of the filing date, $2,500 remained in the account.

According to counsel, the Appellant's wife routinely handled the

household finances, paying all, or at least most, of the household bills. Therefore, the funds were released to her so she could pay one remaining credit card debt. After the Appellant filed for bankruptcy protection, the Appellant's wife paid $10,309.62 to the Appellant's unsecured pre-petition creditor Citi American Express. According to the schedules, the Appellant owed $0.00 to this creditor on the petition date. Before the trust accounting was filed, the Appellee and the Appellant's creditors did not know that the Appellant transferred substantial sums from that account just days before the petition was filed or that money was in a trust account on the filing date because these transfers were not disclosed on the Statement of Financial Affairs.

The Appellant states that when the Chapter 13 bankruptcy case was filed on January 14, 2011, he only filed the minimum documents that were required. He later timely filed the remainder of the required bankruptcy schedules and a proposed voluntary Chapter 13 Plan of repayment, on January 27, 2011.

A meeting of creditors was held as scheduled in March of 2011. At

6

that meeting, certain details of the land transfer were inquired about by a creditor. When ordered to Show Cause why the case should not be converted or dismissed for the flaws in the schedules, the Appellant's explanation was that the inaccuracies were the result of oversight and excusable neglect. The Response indicated that Appellant was always cooperative and forthcoming and that all pertinent facts had been disclosed.

On June 17, 2011, one creditor filed an objection to confirmation of the Appellant's plan and cited the undisclosed land transfer, alleging the transfer was done to defraud creditors. On June 21, 2011, the Appellant filed an Amended Chapter 13 Statement of Current Monthly Income and Disposable Income. On the same date, the Appellant filed Amended Schedules A and J reflecting ownership of real estate and monthly living expenses. The remainder of the corrections that needed to be made to the Appellant's schedules were not made at that time.

(B)

Based on the documents filed, the pleadings, and statements from Appellant's counsel, a creditor and the Chapter 13 Trustee, the bankruptcy

7

court found that the transfers and assets were not disclosed and the Appellant intentionally and fraudulently concealed the land sale, the trust account, and the transfer of funds from the trust account to the Appellant's wife.  On April 25, 2012, the bankruptcy court issued an order disallowing the amended claim of exemptions.  The order states that "[t]he Debtor and his attorney improperly resisted appearing at a Rule 2004 exam requested by a creditor."  The order further provided that "fraudulent concealment of an asset will bar exemption of that asset" and "where a debtor has hidden an asset," his claim of exemption as to the asset may be disallowed.

The bankruptcy court involuntarily converted the Appellant's Chapter 13 case and denied the exemption claimed in funds remaining in the Ostling and Associates trust account to which the Trustee had filed an objection.  The Appellant filed a timely Notice of Appeal on May 3, 2012.

After the conversion and appeal, the Chapter 7 § 341 meeting was first scheduled for May 31, 2012.  The Trustee issued a refund check of $3,765 to the Appellant on June 7, 2012, pursuant to 11 U.S.C. § 1326(a)(2).  The Appellant cashed the check and it cleared the Trustee's

account on June 18, 2012.

## III. DISCUSSION

### A. Mootness of appeal

The Appellee first asserts the appeal is moot for equitable and pragmatic reasons because there is no way to undo actions taken in compliance with the bankruptcy court's order converting the case. Because events occurred in reliance on the court's order and a stay was not timely requested, meaningful appellate review is impractical or impossible.

The Chapter 13 Trustee refunded money to the Appellant on June 7, 2012. Upon conversion, the first meeting of the creditors was set for May 31, 2012, creating deadlines for objections to discharge and exemptions. The Appellant only attempted to stay the Chapter 7 proceedings on June 26, 2012, two months after the order of conversion and the setting of the § 341 date. On July 17, 2012, a hearing was held on the Motion to Stay Chapter 7 proceedings, which was allowed in part and denied in part. On June 27, 2012, the Trustee filed the Trustee's final report.

In contending that the appeal is moot for equitable and pragmatic

9

reasons, the Appellee cites only cases from outside of the Seventh Circuit. The Seventh Circuit does not follow the doctrine of "equitable mootness" in bankruptcy law.  *See United States v. Buchman*, 646 F.3d 409, 411 (7th Cir. 2011).  That court explained there is a major difference "between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome ("equitable mootness")."  *See In re UNR Industries, Inc.*, 20 F.3d 766, 769 (7th Cir. 1994).  Because of the confusion generated, "we banish 'equitable mootness' from the (local) lexicon."  *Id*.

Because this Court is unable to determine that financial adjustments between the parties are impractical or impossible, the Court declines to hold that this appeal is barred by the doctrine of equitable or pragmatic mootness.

### B. Involuntary conversion based on finding of bad faith

The Appellant contends the bankruptcy court erred as a matter of law, committing clear error, and erred as a matter of fact by finding "bad faith" and converting his Chapter 13 proceeding to a Chapter 7 proceeding.

(1)

A bankruptcy court can dismiss or convert a Chapter 13 case, whichever is in the best interest of the creditors, for cause after appropriate notice and an appropriate hearing. *See* 11 U.S.C. § 1307; 11 U.S.C. § 102. Cause for conversion under § 1307 includes bad faith. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 372-74 (2007).

Because "good faith" is a difficult term to precisely define, "the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court." *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992). Thus, bankruptcy courts have been directed to consider the "totality of circumstances and, thereby, make good faith determinations on a case-by-case basis." *Id*.

Even a debtor's egregious pre-petition conduct does not give rise to a presumption that the debtor lacked good faith. *See id*. The bankruptcy judge must carefully examine the facts and need not find extraordinary circumstances before dismissing (or converting) a petition. *See id*. at 1356. The bankruptcy court should consider whether the circumstances show there has been "an abuse of the provisions, purpose or spirit of [the

11

Chapter]." *Id*. at 1357 (internal quotation marks and citations omitted). "[T]he focus of the good faith inquiry . . . is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Id*.

In *Love*, while stating that the focus remains on "fundamental fairness," the Seventh Circuit listed a number of non-exhaustive factors which should be considered in determining whether a Chapter 13 petition was filed in good faith:

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Id*. at 1357 (citations omitted). The debtor in *Love* was an active tax protestor who had filed a Chapter 13 case "in order to thwart the payment of an otherwise nondischargeable income tax debt arising from the unlawful failure to pay income taxes." *Id*. at 1359. Because there were ample facts

12

supporting the bankruptcy court's determination regarding Love's purpose, the Seventh Circuit determined that the bankruptcy court's finding of a lack of good faith on the part of the debtor was not clearly erroneous. *See id*.

(2)

The Appellant contends that in this case, although the bankruptcy court converted his Chapter 13 case to Chapter 7 because it found the debtor acted in bad faith, the bankruptcy court did not acknowledge or consider the test outlined by the Seventh Circuit, and thus never weighed the relevant factors to support a proper finding. The Appellant claims that the failure to consider the matter under the appropriate legal test is an error as a matter of law.

The Appellant claims the bankruptcy court said only that the mistake or omission "was a serious fraud on the Court and it was covered up," and that it believed he was aware of the omission and did not say anything. Because he alleges that the court did not point to any evidence and did not weigh any factors to support a finding of intentional concealment and bad

13

faith, the Appellant contends the determination should be reversed as a matter of law.

The Appellant further claims that, although the Seventh Circuit has ruled that a finding of bad faith does not require a finding of knowing and fraudulent conduct in the sense of a Chapter 7 nondischargeability context, *see Love*, 957 F.2d at 1360-61, the bankruptcy court itself raised the issue of conduct that amounted to fraud.  Fraud claims must be pleaded with more particularity than other sorts of claims.  *See* Fed. R. Civ. P. 9(b), *incorporated into the bankruptcy context by* Fed. R. Bankr. P. 7009.  The Appellant alleges the bankruptcy court never mentioned, let alone found, any facts supporting a finding of an intentional misrepresentation.  The bankruptcy court did not address the Appellant's subjective intent or state of mind.  Therefore, the Appellant contends that the bankruptcy court's bad faith finding cannot stand.

As the Appellant acknowledges, a finding of bad faith need not be accompanied by fraudulent conduct.  Therefore, this Court need not determine whether the conduct here amounted to fraud.

14

(3)

In considering the totality of the circumstances, the Court concludes that the bankruptcy court did not commit error in determining the Appellant's conduct amounted to bad faith warranting involuntary conversion. Based on the documents, pleadings and statements at the April 24, 2012 hearing and prior hearings, there was sufficient evidence for the bankruptcy court to find that Appellant and Appellant's counsel had covered up certain transfers and assets which constituted bad faith, warranting conversion or dismissal. The bankruptcy court stated that unlike a Chapter 13 trustee, a Chapter 7 trustee could avoid and recover preferential transfers, thus making conversion the better option in this case.

The Court is unable to conclude that the bankruptcy court erred by failing to explicitly cite the totality of the circumstances test recited by the Seventh Circuit in *Love*. The Seventh Circuit specifically provided that, in determining good faith under the totality of circumstances, "the focus of the inquiry is fundamental fairness" and the list of factors is "nonexhaustive." *See Love*, 957 F.2d at 1357. The court did not say that

any particular factor was more important than another.[1]

Moreover, it is apparent from the record that the bankruptcy court did cite the factors from *Love* it believed to be relevant in this particular case. The Appellant cites no authority which suggests that the bankruptcy court must explicitly acknowledge the totality of circumstances test or any individual factor discussed in *Love*. At the April 24, 2012 hearing, Counsel for the Appellant requested that "all of the factors involved" be considered, to which the bankruptcy court responded "All right."

The bankruptcy court then stated, "I think that both [the Appellant] and [Counsel] knew of the $11,000." The court observed that Appellant

---

[1]The Appellant claims it is difficult to determine what facts Judge Gorman considered at the April 24, 2012 hearing, when she makes a statement such as "Well, I don't read all these pleadings." *See* Transcript, at 13 ¶ 16. The bankruptcy court was attempting to determine whether the $2,595 in Counsel's trust account was disclosed before the court ordered him to do so. The Appellant makes much of the isolated statement noted above. At the same hearing, Judge Gorman also said she "went through the file . . . and looked at a number of things . . . [and] look[ed] at all the pleadings." *See* Transcript, at 9 ¶¶ 6, 11-13. The bankruptcy judge proceeded to speak in detail about the Trustee's objection and subsequent pleadings. Judge Gorman further informed the Appellant's counsel that she reads the pleadings from others as trying to determine whether the $11,000 was disclosed and what became of the $2,500 in the trust account. To the extent that Appellant is alleging Judge Gorman was not familiar with the record based on one isolated sentence, the entirety of the transcript of the hearing establishes that Appellant is mistaken.

was obviously aware that his wife received the $11,000.  It further noted that the funds remained in the trust account and were not disclosed until February of 2012, even though the bankruptcy case was filed in January of 2011.

The bankruptcy court obviously considered certain *Love* factors.  One of the factors considered by the bankruptcy court is "whether the debtor has been forthcoming with the bankruptcy court and the creditors."  *Love*, 957 F.2d at 1357.  The court considered the timing of the petition, and the fact that "a couple of creditors" were fully compensated either right before or after the petition was filed.  The bankruptcy court believed the concealment of the funds was intentional.  A bankruptcy court is entitled to make inferences about a debtor's intent based on the facts in the record. *See In re Neis*, 723 F.2d 584, 589 (7th Cir. 1983).  The intentional concealment of an asset can demonstrate bad faith.  *See In re Yonikus*, 996 F.3d 866, 873 (7th Cir. 1993).  In some instances, reckless behavior is enough to support a finding of bad faith.  *See In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992).

17

The bankruptcy court further observed that the Appellant had "stonewall[ed]" any attempt at investigating his financial affairs. At his Rule 2004 examination on October 25, 2011, the Appellant claimed that he spent $60,000 in land sale proceeds on medical bills, attorney's fees and the Ostling law firm. When the petition was filed, however, the Appellant's wife had $11,000 of the money. Nine months later, at the time of the Rule 2004 examination, Ostling and Associates held $2,595 of that money in trust. This amounts to $13,595 that was not disclosed in the Appellant's schedules or in response to a direct question concerning what became of the proceeds from the land sale. Accordingly, the record demonstrates that the Appellant failed to disclose substantial transfers and assets at the Rule 2004 examination.

There is additional evidence of bad faith. At the February 28, 2012, the bankruptcy court examined the timing of the trust account activity and recognized that the $1,274 taken from the trust account for attorney's fees on January 11, 2011 equaled the bankruptcy attorney's fees and court filing

fees disclosed for the Appellant's case.[2]  Although counsel expressed uncertainty about whether the $1,274 distribution was for bankruptcy fees or other litigation, the bankruptcy court reasonably inferred that the Appellant decided to file for bankruptcy protection on or before January 11, 2011.  If that is accurate, then the $11,000 transfer to his wife on January 12, 2011 was in contemplation of the Appellant's bankruptcy filing.  Based on the amount taken from the trust account, it is apparent that the funds were withdrawn in order to file the Appellant's Chapter 13 Petition, which is probative of bad faith.

The Appellant did not have a reasonable explanation for the $11,000 transfer to his wife a couple of days before filing.  He stated that Ostling and Associates gave the money to his wife because the Appellant usually "charged [his wife] with the duty of paying all of [his] bills" and he wanted her to pay "his $10,309.62 credit card bill."  At the April 24, 2012 hearing, the Trustee informed the bankruptcy court that Appellant's bank statements at least partially contradicted the assertion that his wife usually

---

[2]According to the bankruptcy docket report, on January 14, 2011, the Appellant paid the Chapter 13 Voluntary Petition Amount of $274.00.

paid the bills. The Trustee stated that the amounts for bills, including as to this particular creditor, were often automatically withdrawn from the Appellant's bank account. Bills were also withdrawn from the Appellant's wife's account on some occasions. However, it does not appear that Appellant's explanation is supported by the record. Even if the Appellant's explanation for the $11,000 transfer were true, the credit card payment constituted a substantial preference which was not disclosed for more than one year. The Appellant's intentions with respect to the $11,000 is probative of bad faith.

In his Response to the bankruptcy court's Rule to Show Cause, the Appellant cited "oversight, inadvertence and excusable neglect" for the mistakes, errors and omissions. Although the Appellant's pre-petition activity does not create a presumption of bad faith, the bankruptcy court was entitled to give greater weight to his pre-petition conduct and lack of disclosure and less weight to his assertion of neglect. *See Love*, 957 F.2d at 1359. The bankruptcy court did not err in weighing these factors and concluding that Appellant's actions demonstrated bad faith. The Appellant

was unable to show cause why the case should not be dismissed or converted.

Based on the totality of circumstances, the bankruptcy court did not err in finding bad faith.  Moreover, a bankruptcy court need not accept a debtor's "Oops" defense to the concealment of assets and transfers.  *See Marrama*, 549 U.S. at 370.  It took the Appellant thirteen months to amend his schedules and those schedules were not correct.

Accordingly, the bankruptcy court did not clearly err in finding bad faith based on the totality of circumstances.

## (4)

Upon determining that Appellant's case should be converted or dismissed, the bankruptcy court had to base its decision on what was in the best interest of creditors.  *See* 11 U.S.C. § 1307.  The Appellant asserts conversion is not in the best interests of creditors.

The Appellant contends that, at the time he filed his initial petition, he was an "over-median" income debtor presumably ineligible for Chapter 7 relief.  Thus, conversion would result in a benefit–Chapter 7 discharge

21

when otherwise ineligible–not available to other "over-median" debtors who are not accused of bad faith.  The Appellant further asserts that even if the $11,000 preferential payment were recovered in full by the Chapter 7 Trustee, only a portion of those funds would be available for distribution to unsecured creditors. Accordingly, the Appellant alleges the bankruptcy court's finding as to conversion is clearly erroneous.

The Court concludes that the bankruptcy court's finding, that conversion was a better option for creditors than dismissal, was not clearly erroneous.  The bankruptcy court determined that the possibility of the Chapter 7 Trustee avoiding and recovering the substantial preference payment to the unsecured creditor made conversion the preferable option.

Although the result of a Chapter 7 proceeding is unknown and somewhat speculative at this time, the Court concludes that the bankruptcy court's determination that conversion would be a better result for unsecured creditors was not clearly erroneous.

### C. Denial of amended exemption due to Appellant's bad faith

The Appellant alleges that the bankruptcy court erred as a matter of

law and committed clear legal error by disallowing his amended claim of

exemption on funds held by another party, based on that court's finding of

bad faith and/or unfair prejudice to creditors.  The applicable rule provides:

> A voluntary petition, list, schedule, or statement may be
> amended by the debtor as a matter of course at any time before
> the case is closed.  The debtor shall give notice of the
> amendment to the trustee and to any entity affected thereby.
> On motion of a party in interest, after notice and a hearing, the
> court may order any voluntary petition, list, schedule, or
> statement to be amended and the clerk shall give notice of the
> amendment to entities designated by the court.

Fed. R. Bankr. P. 1009(a).  A trustee or other party in interest may file an

objection to a claim of exemption.  *See* Fed. R. Bankr. P. 4003.

"Amendment may be denied upon a showing of bad faith or prejudice

to creditors or third parties," which must be shown by "clear and

convincing evidence."  *See Yonikus*, 996 F.2d 866, 872 (7th Cir. 1993).  The

court reiterated that "concealment of an asset" bars its exemption.  *See id*.

In barring exemption, the bankruptcy court in *Yonikus* determined that

based on the debtor's conduct, "if the Trustee had not discovered the

personal injury action, the Debtor would never have reported it to the

Bankruptcy Court."  *Id*. at 873 (citation omitted).  The Seventh Circuit

rejected the debtor's defense of innocent misunderstanding and upheld a finding that he intentionally and fraudulently concealed from the estate his worker's compensation award. *See id*. at 872-73.

In this case, although the Appellant alleged in court filings that he had no intent to defraud, the bankruptcy court had a legitimate basis to believe he would not have disclosed the trust account if he was not ordered to do so. The record establishes he transferred $11,000 to his wife two days before the petition was filed, which show that Appellant knew he had a trust account at the time of the filing date. However, the Appellant did not disclose the trust account on his schedules, failed to disclose it at the § 341 meeting, and failed to disclose it at the Rule 2004 examination. As it found in converting the case, the bankruptcy court denied the exemption because of the Appellant's bad faith.

Bankruptcy schedules are signed under penalty of perjury. *See* Fed. R. Bankr. P. 1008. The Appellant signed the initial schedules that failed to list the trust account. The record establishes that, at the § 341 meeting on April 24, 2012, the Appellant swore to the accuracy of his schedules. At the

Rule 2004 examination on April 3, 2012, the Appellant did not disclose the trust account even when specifically asked what happened to the proceeds from the sale that funded the trust account.

Based on the foregoing facts, the bankruptcy court found that Appellant, Patrick Dennis Killian, and Appellant's counsel, Jeffrey Abbott of Ostling & Associates, were aware of the trust account and responsible for its non-disclosure, stating at the April 24, 2012 hearing:

> We can't – I mean, the whole system relies on honesty. It relies on honesty. And there was $11,000 transferred a couple of days before the case was filed, 25, almost $2600 sitting in a trust account and Mr. Killian never disclosed that. And he's responsible for that and you're responsible for it, Mr. Abbott. And it just – it just can't happen, so you have to be sanctioned.

*See* Transcript, at 27. Based on the intentional non-disclosure of the trust account, there is clear and convincing evidence of bad faith on the part of the Appellant (Killian) and his Counsel (Abbott) in the concealment of assets. Accordingly, the bankruptcy court did not clearly err in denying the Appellant's amended claim of exemption as to the trust account.

## IV. CONCLUSION

Based on the foregoing, the Court finds that this appeal is not barred

25

by the doctrines of pragmatic and equitable mootness.  The Court further concludes the bankruptcy court did not clearly err in finding bad faith and converting the Appellant's case to Chapter 7.  Moreover, the bankruptcy court did not clearly err in denying the Appellant's amended claim of exemption based on the court's finding of bad faith.

Ergo, the decision of the Bankruptcy Court is AFFIRMED.

This case is closed.

ENTER: September 27, 2013

FOR THE COURT:

*s/Richard Mills*
Richard Mills
United States District Judge

26